



FILED
2005 FEB -1 AM 11:05
BY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FONOVISA, INC., ET. AL., §
Plaintiffs, §
§
V. § A-04-CA-550-LY
§
DOE No. 1, §
Defendant. §

**ORDER**

Before the Court is the Response of Grande Communications, Inc. ("Grande") to Subpoena and Motion to Establish Standing Procedures, filed October 15, 2004 [Dkt. 7/8]; Plaintiffs' Opposition to Response of Grande Communications, filed November 10, 2004 [Dkt. 11]; Grande's Reply, filed November 19, 2004 [Dkt. 17]; Plaintiffs' Motion to Strike the Affidavit of Henry Jacobsen, filed December 2, 2004 [Dkt.18]; Grande's Response to Plaintiffs' Motion to Strike the Affidavit of Henry Jacobsen, filed December 12, 2004 [Dkt. 20]; and Plaintiffs' Reply to Grande's Response, filed December 17, 2004 [Dkt. 21]. The motions were referred to the undersigned Magistrate Judge's docket pursuant to 28 U.S.C. § 636(b)(1)(a), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas. A hearing was conducted on December 20, 2004. After considering the parties' pleadings, the entire case file, and oral argument, the undersigned issues the following order.

## I. BACKGROUND

Plaintiffs, members of the Recording Industry Association of America, Inc. ("RIAA"), are record companies holding copyrights to numerous sound recordings. They allege Defendant has, without permission, used the Internet to download, and/or make available for download to others, various copyrighted sound recordings. Plaintiffs contend these actions constitute copyright

24.

infringement, entitling them to damages from Defendant.[1] Grande is not a party to this litigation but is merely Defendant's Internet Service Provider ("ISP").

Although Plaintiffs do not know Defendant's true name, they have identified the unique Internet Protocol ("IP") address assigned to Defendant during Defendant's allegedly infringing activity. By cross-referencing the IP address and date and time of Defendant's allegedly infringing activity with Grande's connection and billing records, it is possible for Grande to determine Defendant's true name. On August 25, 2004, Plaintiffs moved for expedited third-party discovery [Dkt. 3], requesting leave to subpoena Grande for the purpose of obtaining Defendant's name. Plaintiffs' motion was granted on September 29, 2004 [Dkt. 6]. Grande has objected to the subpoena on the ground that compliance would involve significant costs. Grande seeks compensation in the amount of $105.00. Grande also seeks additional time to respond to Plaintiffs' subpoena.

## II. DISCUSSION

### A. Plaintiffs' Motion to Strike the Affidavit of Henry Jacobsen

Plaintiffs move to strike the affidavit of Henry Jacobsen on the ground that it was not submitted until Grande filed its reply brief. Local Court Rules 7(b) and 7(c) require a moving party to file with its motion any affidavits, documents, or other evidentiary materials supporting the factual assertions contained in the motion. The purpose of this rule is to ensure that parties opposing a motion will have adequate opportunity to respond to the movant's factual allegations. Although Grande may have technically violated the local rules, Plaintiffs have suffered no prejudice. After receiving Mr. Jacobsen's affidavit in Grande's reply brief, Plaintiffs cross-examined Mr. Jacobsen and presented oral argument at the December 20, 2004 hearing. Accordingly, Plaintiffs' motion to strike the affidavit of Henry Jacobsen is hereby **DENIED**.

---

[1] Plaintiffs originally filed this action against Does 1-41. The District Court dismissed, without prejudice, all but the first Doe under FED. R. CIV. PRO. 20(a) on November 17, 2004 [Dkt. 15].

**B. Costs**

Rule 45 of the Federal Rules of Civil Procedure governs issuance and service of subpoenas and provides that an order to compel document production by a non-party must "protect" the non-party "from significant expense resulting from the inspection and copying commanded." FED. R. CIV. PRO. 45(c)(2)(B). Although Plaintiffs have not formally moved to compel production, the Court construes Plaintiffs' Opposition to Response of Grande Communications to Subpoena and Motion to Establish Standing Procedures [Dkt. 11] as a motion to compel, thus triggering the requirements of Rule 45(c)(2)(B). Therefore, the Court must ensure that the non-party ISP is "protected from significant expense" in complying with Plaintiffs' subpoena.

Although it is tempting to assume, given the power of modern computer systems, that Grande could obtain the requested information with a few keystrokes, Grande has presented substantial evidence to the contrary. The affidavit of Grande's Chief Information Officer, Henry Jacobsen, provides a detailed explanation of the steps necessary to obtain Defendant's true name. According to Mr. Jacobsen, when a customer connects to the Internet, Grande assigns that individual a "dynamic" IP address, which remains valid only for the duration of the session. When the customer reconnects, Grande assigns a new IP address. The procedure for determining the identity of a customer using a specific IP address at a specific time is as follows:

> Upon receipt of an RIAA subpoena, it is necessary for Grande to de-archive the IP lease information by manually reloading the connection records recorded on multiple tapes or disks, and electronically searching these records on a case-by-case basis. The maintenance records only identify when a dynamic IP lease was initiated (granted) and terminated (released), and the equipment ID (MAC address) of the equipment. On a lease that was held for several weeks or months, which is often the case with cable modems and DSL services, a lengthy search must be initiated to locate the times and dates the IP address was allocated. The various dates and times of an IP address lease and release must be manually matched up, then decoded to identify the lease interval that covers the specific date and time of the subpoena. This result only provides the Media Access Control (MAC) address of the cable or

> DSL modem. Once the equipment address is identified, there is another manual search made in our billing system (or systems) to identify the account and customer associated with that equipment. Since equipment is often recovered and reassigned due to customer turnover, it is necessary that each customer record be carefully examined for length and time of service. If this process is not completed by hand, an incorrect name might be linked to an IP address and given to RIAA, defeating the purpose of the subpoena. Grande's billing is [done] through one of three difference billing platforms, the largest of which is a service bureau. The service bureau session does not support a simple cut-and-paste of customer data. So a hard copy of the customer record must then be printed and the customer data re-entered in the process of formatting the information into an acceptable legal response.

(Jacobsen Aff. at 2-3). Mr. Jacobsen estimates this process takes approximately 1.75 hours of staff time to complete, at an hourly rate of $60.00, for a total cost of $105.00. *Id.* at 3. Mr. Jacobsen further estimates that approximately 1.25 hours of this time is attributable to "administrative" tasks, such as data entry and document production, while .5 hours is attributable to searching for and retrieving the requested information.

In response, Plaintiffs contend that Grande's request is unreasonable because other ISPs, like SBC Internet Communications ("SBC"), have testified in other cases that complying with similar subpoenas required only .25 to .75 hours per IP address. A careful review of SBC Policy Specialist Carol Ford's affidavit in a similar case, however, reveals that Grande's estimates are comparable to those of SBC. Consistent with Plaintiffs' contention, Ms. Ford testifies that "on average it takes at least 15 to 45 minutes to identify a particular subscriber with an IP address and then to verify the subscriber's personal data." (Ford. Aff. at 3). Ms. Ford further testifies, however, that "[t]he administration process . . . takes at least as long as the initial search process[.]" *Id.* Therefore, SBC's total estimate for complying with Plaintiffs' subpoena is .5 to 1.5 hours per IP address. Grande's estimate of 1.25 hours is clearly within this range.

Although the Court thus finds Grande's estimated time expenditure reasonable, Grande's hourly rate of $60.00 appears overstated. Grande's own description of the various tasks involved

in complying with Plaintiffs' subpoena indicates that only .5 hours is attributable to searching for and retrieving the requested information. An hourly rate of $60.00 appears reasonable for these tasks, which require some knowledge of sophisticated computer systems. The remaining 1.25 hours, however, consists of relatively unskilled administrative tasks. The Court is not persuaded that these administrative tasks require the skills of an employee making almost $125,000 per year in salary and benefits. Although it is difficult to calculate precisely the going rate for such administrative work, the Court finds an hourly rate of $20.00 reasonable. Accordingly, the Court finds that Grande should be compensated in the amount of $55.00 (1.25 hours X $20.00 + .5 hours X $60.00) for complying with Plaintiffs' subpoena. The Court further directs Plaintiffs to provide such compensation to Grande in advance of Grande's production of the requested information.

**C. Time**

Under Rule 45, courts must allow a "reasonable time for compliance" with a subpoena. FED. R. CIV. PRO. 45(c)(3)(A)(i). Grande claims it requires forty-five (45) days from the date it receives the subpoena to obtain the requested information and notify Defendant, another twenty (20) days for the subscriber to move to quash, and then, if the subscriber does not move to quash, another ten (10) days to produce the requested information. (*See* Grande Response at 3-4). The total time Grande requests for responding to the subpoena is thus seventy-five (75) days.

The Court finds Grande's request unreasonable. Grande has stated that obtaining and producing the requested information takes, at most, 1.75 hours. Grande's request for seventy-five (75) days therefore appears excessive, even taking into account the time needed for downloading any archived information[2] and notifying Defendant.[3] Moreover, the Court finds that providing a

---

[2] At the hearing, Mr. Jacobsen testified that downloading archived information was an automated process that could take up to ten (10) hours.

[3] As Plaintiffs note, moreover, Grande was able to respond to an earlier similar subpoena in only seventeen (17) days. (See Plaintiffs' Opposition at 2).

specific notification period is unnecessary. Defendant will have an opportunity to move to quash the subpoena, which will adequately protect his privacy interests. Of course, if Grande wishes to notify Defendant, it is free to do so; but the notification must occur within the time-frame established by the Court for complying with the subpoena. Given that obtaining the requested information will take Grande a few hours, at most, the Court finds that twenty-eight (28) days, inclusive of whatever notice period Grande deems appropriate, is a reasonable time for Grande to comply with the subpoena.

**D. Motion to Establish Standing Procedures**

In anticipation of numerous future subpoenas from Plaintiffs and other members of the RIAA, Grande asks the Court to establish "standing procedures" governing compliance with such subpoenas. The RIAA is an umbrella organization representing numerous copyright holders. Many of the cases currently on file name individual plaintiffs different from those named in the instant matter. Therefore, the Court is reluctant to establish procedures purporting to bind different parties in other cases. Nevertheless, any party seeking identifying information from Grande, like the information sought here, should be on notice that the Court considers the time-limits and compensation structure established herein to be reasonable. Grande's motion to establish standing procedures, however, is **DENIED**.

SIGNED this 1st day of February, 2005.

ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE